# UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| Rev. Dr. ANNE ARMSTRONG | ) | |
| First Plaintiff | ) | |
| | ) | |
| and | ) | |
| | ) | |
| Rev. Dr. ALAN GORDON | ) | Civil Action No. 16-403 |
| Second Plaintiff | ) | |
| | ) | |
| v | ) | |
| | ) | |
| PETER KILMARTIN, | ) | |
| in his capacity as Attorney General for Rhode Island and | ) | |
| Providence Plantations, | ) | |
| First Defendant | ) | |
| | ) | |
| and | ) | |
| | ) | |
| GINA RAIMONDO, | ) | |
| in her capacity as Governor of Rhode Island and Providence | ) | |
| Plantations | ) | |
| Second Defendant | ) | |
| | ) | |
| and | ) | |

Civil Action No. 16-403
*Armstrong & Gordon v Kilmartin, et al*

)

Col. ANN ASUMPICO,                                          )

in her capacity as Chief Executive                          )

Rhode Island State Police                                   )

                                    Third Defendant     )

)

and                                                         )

)

ASHABEL T. WALL II,                                         )

in his capacity as Director, Rhode Island Department        )

of Corrections                                              )

                                 Fourth Defendant   )

)

and                                                         )

)

Maj. KEVIN O'BRIEN,                                         )

retired Rhode Island State Police (3rd Defendant), and      )

current Compliance Officer, Catholic Diocese of Providence) )

in his personal capacity                                    )

                                 Fifth Defendant    )

)

and                                                         )

)

Civil Action No. 16-403
*Armstrong & Gordon v Kilmartin, et al*

Ofc. JOHN DOE 1, an off-duty police officer                    )

in his personal capacity                                        )

                                  Sixth Defendant    )

                                                               )

and                                                            )

                                                               )

Mr. JOHN DOE 2,                                                )

in his personal capacity                                       )

                        Seventh Defendant    )

                                                               )

and                                                            )

                                                               )

THOMAS C. SLATER COMPASSION CENTER, INC,                       )

                       Eighth Defendant    )

                                                               )

and                                                            )

                                                               )

WORLDS ONLINE, INC                                             )

                       Ninth Defendant    )

                                                               )

and                                                            )

                                                               )

Civil Action No. 16-403
*Armstrong & Gordon v Kilmartin, et al*

MARIMED ADVISORS, INC,                              )

a subsidiary of Worlds Online, Inc (the 9th Defendant)   )

                              Tenth Defendant   )

                                          )

and                                                )

                                          )

SIGAL CONSULTING, LLC,                              )

a subsidiary of Worlds Online, Inc. (9th Defendant), and a   )

subsidiary to Marimed Advisors, Inc. (10th Defendant)   )

                        Eleventh Defendant   )

                                          )

and                                                )

                                          )

Lt. Col. RAYMOND WHITE,                            )

In his personal capacity and in his capacity as      )

retired Rhode Island State Police (3rd Defendant), and   )

Chief Operating Officer for the Thomas C. Slater      )

Compassion Center, Inc. (8th Defendant), and         )

Security Director for Sigal Consulting LLC (12th      )

Defendant), and Advisor to MariMed Advisors Inc. (10th   )

Defendant)                                    )

                        Twelfth Defendant   )

                                          )

and                                                              )

                                                                 )

Cpl. JAMES E. GRIFFIN                                            )

in his personal capacity and as                                 )

retired Rhode Island State Police (3rd Defendant), and as       )

"Key Manager, Board Member and Financial Backer" of             )

the Thomas C. Slater Compassion Center, Inc.                    )

(8th Defendant), and Advisor of MariMed Advisors, Inc           )

(11th Defendant), and Operations Consultant of Sigal            )

Consulting, LLC (12th Defendant)                                )

                                  Thirteenth Defendant )

                                                                 )

and                                                              )

                                                                 )

GERALD MCGRAW, JR.                                              )

in his personal capacity and as Chief Executive Officer of      )

the Thomas C. Slater Compassion Center, Inc.                    )

(8th  Defendant), and Advisor of MariMed Advisors, Inc          )

(11th Defendant), and Partner of Sigal Consulting LLC           )

(12th Defendant)                                                )

                                  Fourteenth Defendant )

                                                                 )

and                                                    )

                                                       )

Lt. THOMAS J UNDERWOOD,                                )

in his personal capacity and as                        )

retired Rhode Island State Police (3rd Defendant), and )

Security Director for the Thomas J. Slater Compassion  )

Center, Inc. (8th Defendant)                           )

                              Fifteenth Defendant  )

                                                       )

and                                                    )

                                                       )

JOEL ALLCOCK,                                          )

in his personal capacity and as employee or agent of   )

Sigal Consulting, LLC (11th Defendant),                )

a subsidiary of Worlds Online, Inc. (9th Defendant)    )

and a subsidiary to Marimed Advisors, Inc.             )

(10th Defendant)                                       )

                              Sixteenth Defendant  )

                                                       )

JON LEVINE,                                            )

in his personal capacity and as                        )

Chief Financial Officer of MariMed Advisors, Inc       )

(10th Defendant), and Co-founder, Partner,             )

and President of Sigal Consulting, LLC                    )

(11th Defendant)                    )

      Seventeenth Defendant)

         )

and                    )

         )

ROBERT N. FIREMAN,                    )

In his personal capacity and as                    )

Director of Worlds Online, Inc. (9th Defendant),                    )

 And Founder and Chief Executive Officer of MariMed                    )

Advisors Inc. (10th Defendant), and Co-Founder                    )

and Principal of Sigal Consulting, LLC                    )

(the 11th Defendant)                    )

      Eighteenth Defendant )

         )

and                    )

         )

         )

Judge DAN LYNCH                    )

In his personal capacity and as Founder and Director of                    )

20[st] Defendant Dan Lynch Apostolates                    )

      Nineteenth Defendant )

and                    )

Civil Action No. 16-403
*Armstrong & Gordon v Kilmartin, et al*

)

<u>DAN LYNCH APOSTOLATES,</u>                                )

Doing business as The Missionary Image of Our Lady          )

of Guadalupe, Inc.                                          )

Twentieth Defendant )

<u>AMENDED ACTION FOR INJUNCTION AND DAMAGES</u>

<u>FOR DEPRIVATION OF CONSTITUTIONAL RIGHTS</u>

<u>BY PUBLIC OFFICIAL CORRUPTION RING</u>

<u>COUPLED WITH SYSTEMIC PRE-TRIAL PROCESS ABUSE PATTERN</u>

**<u>Introductory Outline:</u>**

**Complaint Amended, to Include Official Corruption Rings and**

**Serious Pre-trial Process Abuse Pattern**

1. This is an amended version of an action for protective injunction and/or damages, originally filed July 15, 2016 against the 1st Defendant, Rhode Island ("RI" and/or "the State") Attorney General Peter Kilmartin ("Gen. Kilmartin") of 150 South Main Street Providence RI, and/or against the State of RI in his Office's name.

2.  The original Complaint was a hurried unrepresented attempt to protect a religious cannabis garden and related material from RI law enforcement.  The 1st Plaintiff, Rev. Dr. Anne Armstrong ("Rev. Dr. Armstrong"), is a clergywoman and leader of The Healing Church in RI, and uses cannabis for Communion, following original Biblical instructions for a plant called *KNH BSM*. The 2nd Plaintiff (Rev. Dr. Gordon) is likewise a clergyman, and serves The Healing Church in RI as interpreter of Ecclesiastical law, using cannabis likewise.  Both reside at 99 Hudson Pond Road, West Greenwich RI.

3.  The original Complaint is now widened to include more Defendants and related actionable torts and/or fundamental rights breaches, in a nexus of State mishandling of the 1st and 2nd Plaintiffs and their religious exercise, especially by Gen. Kilmartin and a ring of retired and/or active lawmen now named as Defendants herein.

4.  The original Complaint alleged unconstitutional official acts/omissions against the 1st and 2nd Plaintiffs' sacramental cannabis plants and related materials, which (though it is barely relevant here) were at least arguably lawful in plain RI and even federal substantive criminal primary and/or secondary legislation -- even without any special religious protections.

5.  The State and/or Attorney General's actions and/or omissions against the Plaintiffs as originally complained of were of the sort to be treated by Courts as if they were *deliberate* religious discrimination, in the forms of:

Civil Action No. 16-403
*Armstrong & Gordon v Kilmartin, et al*

A. unconstitutional *Establishment* of churches serving wine to children in violation of the 1st Amendment to the United States (US) Constitution; and/or

B. non-*Equal Protection* relative to wine-Communing worshipers' statutory and discretionary protections, in violation of the Constitution's 14th Amendment; and/or

C. *Free Exercise* denial, in which even laws which are neutral, generally-applicable, and only incidentally (not deliberately) burdensome to religious exercise are nonetheless to be treated **as if fully** deliberate (i.e. attracting strict scrutiny) if/when such laws are combined with concurrent breaches of other fundamental rights such as *Free Speech, Expression, Association and Assembly* (1st Amendment), *Due Process/ Fair Trial* and or *Life* (5th, 6th and 14th Amendments), etc.

**Significant Pre-Trial Change of Material Circumstances**

6. Since the initial filing, significant changes of material circumstance have occurred.

A. Tuesday July 19th 2016, two business days after this Complaint was first filed, Rev. Drs. Armstrong and Gordon underwent felony arrest, criminal charge, bizarre jail and bail restrictions (described below in paragraph 115 as *Excessive* and/or *Cruel and Unusual* in breach of the 8th Amendment), and confiscation/destruction of relevant subject matter, including but not limited to irremediable harm to living plants/time available for therapeutic, religious and/or any other purpose; and

B.  As described in the body of this amended Complaint, the 1st Defendant Gen. Kilmartin and/or his RI State agents, in conjunction with other now-named Defendants, undertook an erratic series of process abuses against the 1st and/or 2nd Plaintiffs in and around proceedings themselves, such as:

> (1) **converting arrest-related property across State lines** under color of law and subsequent to extortion (now under investigation by the FBI as gender and/or religious enhanceable hate crimes) and defamation,

> (2) blockage/theft of a *habeas* filing from jail,

> (3) first-ever in the State unequally-protected access to life-saving lawful medicine while on bail for the 1st Plaintiff relative to others using the same medicine, and

> (4) deliberately misleading Courts (both Federal and State District Courts)

7.  1st Defendant Gen Kilmartin and/or his agents so badly and repeatedly abused process and newly violated still other fundamental rights of the 1st and 2nd Plaintiffs  (the sorts of "concurrent rights breaches" which, if occurring side-by-side with statutory and/or practical religious exercise burden, are unconstitutional  as per paragraph 5.C., above, even if not actually deliberate) that the 1st and 2nd Plaintiffs' growing certainty of 1st Defendant Gen Kilmartin's bad faith then made, for the first time, the behavior of *other* bad faith actors (now

also named as Defendants, in this amendment) credibly apparent as being connected to the rights breaches at first complained of in the original July 15th 2016 Complaint.

8.  Accordingly, this new amended Complaint adds nineteen (19) new Defendants, mostly natural persons, up to **eleven (11) of whom are and/or were current or retired law officials** -- and none of whom personally arrested the 1st and 2nd Plaintiffs July 19, 2016.

9.  This amended Complaint, with respect to the originally Complained-of cause(s) of action, is now widened to include still more deprivations of the Plaintiffs' non-religious fundamental substantive rights in conjunction with burdened religious exercise -- by what appears to be several inter-connected law enforcement **corruption rings, members of whom are personally, beneficially involved in in the exclusive Statewide RI distribution of cannabis** and/or the unlawful and unconstitutional protection (relative to others) thereof.  Such corruption (along with other breaches) described herein includes but is not limited to such highly irregular means as off-duty assault/battery and official cover-up thereof, evidence tampering, outright official theft, and/or other willful denial of plain statutory and Constitutional rights under color of law in violation of 42 US Code § 1983 and/or 18 U.S. Code § 242 ,and as detailed in the Complaint body below.

10. The first nexus tying all 21 of the Defendants together is that each, wittingly or unwittingly, in conjunction, abeyance, aid, and/or even bad faith conspiracy with others, at a minimum deprived the 1st and 2nd Plaintiffs' fundamental rights (even rights entirely outside of religion) *in conjunction with* application of anti- religious exercise laws which were at their best neutral

and generally-applicable -- and which were in practice only even occasionally either neutral or generally-applicable.  In such cases, whether deliberate or not, such interference with Free Exercise is to be treated **as if deliberate** as outlined in the original Complaint and in paragraph "5.B." above.

11. The second nexus tying all of the Defendants together, and especially to Gen. Kilmartin, is the overarching theme of *Unequal Protection* granted Rev. Drs. Armstrong and Gordon, relative to protections given to:

   A. Classes of people who the original (pre-amended) Complaint listed as a handful of Churches being granted special protections to give wine to children dangerously, and

   B. Classes of people who now, in this amended Complaint, are widened to include a ring of retired police and their associates also being given special protection to deal cannabis relatively unlawfully.

12. Some of the rights abuses alleged herein are clearly actually deliberate, some less so, but the nexus tying all of the Defendants together is that at a minimum, each Defendant, in the name of or in the capacity of the State and/or often under color of law (usually in conjunction with the Office of the 1st Defendant Gen. Kilmartin), deprived or helped deprive the 1st and 2nd Plaintiffs of at least one fundamental right -- especially *Equal Protection*, but others, too -- in conjunction with the application of a law that barred religious exercise, which was at best neutral and of general applicability, with State law enforcement.

Civil Action No. 16-403
*Armstrong & Gordon v Kilmartin, et al*

13. The 2nd Defendant (RI Governor Raimondo, or 'Gov. Raimondo" of Rhode Island State House, 82 Smith St, Providence, RI,) the 3rd Defendant (RI Police Commissioner Colonel Assumpico, or "Col. Assumpico" of 311 Danielson Pike, North Scituate, RI) and 4th Defendant (RI Corrections Director Wall, or "Director Wall" of 40 Howard Avenue, Cranston RI) are each named in their official capacities as wielding Executive Command over relevant State personnel, agents and institutions, in whose official capacity Complaint is lodged against the State itself (including its law and practice). Those 3 officials, Governor, Police Commissioner, and Corrections Director, are relatively distinct herein from other named law enforcement personnel in that the 2nd, 3rd, and 4th Defendants are not herein alleged to have performed in deliberate personal human bad faith (though some of their agents may or must have), unlike other officials named herein as bad faith actors.

14. The persons of the 2nd, 3rd and 4th Defendants are said herein to be in no worse faith than neutral, though that does not relieve them of their strict duty not to apply neutral, generally-applicable law against religious exercise in combination with other fundamental rights breaches.

**Distinctly Patterned "Combination Punches" of Official Rights Breaches
Deployed by More than One Defendant**

15. Despite the new flurry of Defendant numbers, Complaint breadth, and fact, the original
Complaint's main two sought-after rights recognitions (religious and fair trial/due process) still
overarch the whole matter.   These key issues are at risk of becoming swallowed up by the
dramatic changes of material circumstance leading to the amendments and new related
complaints.   For that reason, the original Complaint is left intact (attached as an addendum to
this amended version, as "**Original Pre-Amendment Complaint**").   Re-stated simply, the two
pre-amendment legal issues which are not only still relevant, but which in fact still over-arch
the entire case, are:

A.  that Courts are to treat as if deliberate any occurrence of concurrent religious and other
fundamental rights breaches, whether actually deliberate or not.

B.  that *Due Process* and *Fair Trial Rights* are compromised by Defendants' official reliance
in statute and practice on a mis-spelled foreign slang word ("*m-ri-u-na*"), in contravention
of the 5th, 6th, and 14th Amendments.   That use of prejudicially-derogatory, non-probative
RI statutory word is here, in the amended Complaint, still complained-of. The use of
prejudicial language (in conjunction with *Free Exercise* restraint) has been worsened by
the complication of some Defendants who moved outside of the bad statutory language
previously complained-of, and began detrimentally using still other, different prejudicial,
non-probative language against the 1st and 2nd Plaintiffs in Court proceedings as well as

other official and quasi-official proceedings.  This was especially done, as outlined in the

body of the Complaint below, by the persons, agents and/or vicarious supervisors of the 1st

Defendant Gen. Kilmartin and/or 5th Defendant State Police Maj. Kevin O'Brien

(described below) and/or others, for the purpose of, or toward the inevitable ends of,

depriving the Rev. Drs Armstrong and/or Gordon of their rights to *Due Process, Fair Trial*

and/or freedom from Defamation.


**Facts**


**Complaint/Defendant Groupings**


16. 1st and 2nd Plaintiffs now Complain herein that groups of individuals (companies and natural

persons, many of whom are current or retired lawmen) deprived them of plain statutory rights

and/or fundamental constitutional rights, relative to other persons and/or just generally, often

under color of law, and/or in the at-least incidental practice of burdening the 1st and 2nd

Plaintiffs' *Free Exercise*.   Rights breaches occurred in overlapping and inextricably

intertwined Groupings, and are arranged below as such.  The Grouping headings are as listed

below, and as immediately followed by more detailed factual descriptions:


Group 1  --Retired VT Judge Dan Lynch, and Attorney General Kilmartin -- in which an

out-of-State retired judge improperly influenced RI's Attorney General to tamper with

criminal evidence and thereby convert the 1st Plaintiff's property over State lines, to the

judge, under color of law, while boasting that it was done over disagreement in religious belief.

Group 2  --  State Police Maj. O'Brien, plus an unknown off duty policeman and his henchman -- in which Maj. O'Brien was involved in a quasi-official coverup of unlawful attacks and deprivations of the 1st and 2nd Plaintiffs' participation in a Catholic Mass by an unknown off-duty policeman, his unknown henchman, and an unidentified Church security guard.  Maj. O'Brien's key role in this rights deprivation series is underscored by his further role in Group 3, also, immediately below,

Group 3  --  Retired State Police ring's overt lawbreaking protected by Gen. Kilmartin and Maj. O'Brien -- in which the retired State Police dominating the RI retail cannabis sector are receiving distinctively-patterned special protections for apparent rampant law-breaking from Officials who do not grant even statutory protections to those cannabis growers being as or more lawful than the retired police in question.

Group 4  --  Process badly abused repeatedly by both Attorney General and Jail staff  --  in which the Attorney General's staff, as well as the RI Intake Jail, abused process badly and repeatedly in pre-trial proceedings, including deliberately misleading the Courts, blocking an attempted *habeas* filing, supra-legally attempting to block life-saving medicine as a bail condition, etc.

Civil Action No. 16-403
*Armstrong & Gordon v Kilmartin, et al*

GROUP 1:

Retired VT Judge Dan Lynch and RI Attorney General Kilmartin

GROUP 1 INTRODUCTION

17. The following paragraphs depict an out-of-State retired VT Judge's improper influence over the RI Attorney General's treatment of the 1st and 2nd Plaintiffs, resulting in the Attorney General's **conversion, under color of law, of property over State lines** personally to the retired judge, owing to the judge's difference of religious and/or gender opinion with the 1st and/or 2nd Plaintiffs, in the context of RI's July 18 2016 arrest of the 1st and 2nd Plaintiffs' and/or the retired judge's apparent extortion and/or defamation thereof.

18. The factual/legal picture painted herein depicts clear violations of *Due Process* and/or *Fair Trial, Equal Protection, Unwarranted Search/Seizure* protections, and *Exercise/Establishment* rights. It also sets a pattern of such behavior by the State and/or its agents which will be seen repeated in Groups 2, 3, and 4 below.

GROUP 1 FACTS

19. The 19th Defendant Dan Lynch ("Judge Lynch") of 144 Sheldon Rd, Saint Albans, Vermont (VT) is and was at all material times a retired Judge from the State of Vermont and an infamous protester of the killing of unborn children. The 20th Defendant, Dan Lynch Apostolates ("the Apostolates"), also of 144 Sheldon Rd, Saint Albans, VT, is and was at all material times a

company controlled by Judge Lynch, and which seeks to condemn abortion and raise money for that purpose. The Apostolates do business as "The Missionary Image of Our Lady of Guadalupe, Inc."

20. From September 2015 onwards, the 19th and/or 20th Defendants claimed in writing to be "Guardians" of a 6 foot-tall, +/- 100 pound replica travelling missionary painting ("The Missionary Painting") of *La Virgen de Guadalupe*, a 15th century miraculous Catholic Mexican botanical healing icon. The Missionary Painting itself purported in writing, on the painting itself, to, belong to the Cardinal of Mexico, who supports traditional ancient Mexican usages of therapeutic cannabis.

21. According to Missionary Painting hosting advertisement by the 19th and/or 20th Defendants, temporary Guardianship of the painting could be obtained by applicants willing to put in 3-4 months of preparation. Starting in or around September 2015, Plaintiff 1, Rev. Dr. Armstrong, began such preparations. Starting in and around February 2016, Rev. Dr, Armstrong began contacting the 19th and 20th Defendants by telephone and email, actively seeking legal counsel from retired Judge Lynch (who once did *pro bono* law work for Pro-Life civil disobedience activists. Rev. Dr. Armstrong at that time also began applying for and otherwise seeking a Guardianship turn with the Missionary Painting as advertised by the 19th and/or 20th Defendants online.. Rev. Dr. Armstrong was forward about the unusual nature of her ministry, relative to cannabis as Tree-of-Life and her belief that the Missionary Painting depicted cannabis flowers in the floral print of the Blessed Mother's dress.

Civil Action No. 16-403
*Armstrong & Gordon v Kilmartin, et al*

22. On or about late April 2016, Judge Lynch and /or the Apostolates transferred Guardianship and physical custody of the Missionary Painting to the 1st Plaintiff Rev. Dr. Armstrong under terms which must be either a contract, or a trust, or a purpose-based honor-system gift. The Postolates and/or Judge Lynch's agent asked Rev. Dr. Armstrong in writing not to return the Missionary Painting at the proposed end date of the Guardianship, but instead to save shipping costs by waiting for the next Guardian to enlist. Hence, there was no contracted or legally entrusted return date shy of those circumstances, if there was any contract or trust to do so at all.

23. Soon after receiving physical possession of the Missionary Painting, 1st and/or 2nd Plaintiffs began publicly displaying the image, with cannabis; reiterating the claim that the painting's dress floral print depicted cannabis, along with other claims, such as that cannabis, an anti-viral agent, can prevent abortions by killing Zika virus. The image was taken to the United Nations Chapel in New York City, for example, and to Providence RI's LGBT Pride Festival immediately after the high profile Orlando LGBT Nightclub attacks.

24. On or about April 30th 2016, 20th and/or 21st Defendants (Judge Lynch and/or the Apostolates) attempted to obtain return of the Missionary Painting by defamation pressure (wrongly claiming the Missionary Painting's Guardianship had obtained by criminal fraud by Rev. Dr. Armstrong), by unwarranted demand of return based on religious and/or political differences, and by threat of criminal prosecution which would allegedly ensue if the Missionary Painting

Civil Action No. 16-403
*Armstrong & Gordon v Kilmartin, et al*

was not returned ahead of the scheduled time, and <u>in conjunction with</u> public statements/retractions demanded in writing from the 1st Plaintiff.

25. Judge Lynch and/or the Apostolates (20th and/or 21st Defendants) soon thereafter stated in writing that their ownership of the Missionary Painting was absolute, and that **no contract or trust existed**.

26. In or about June 2016, Judge Lynch and/or the Apostolates attempted to convince Attorney General Kilmartin (and/or his agents) that the Rev. Dr. Armstrong obtained the Missionary Painting by fraud and/or other criminal deception, but he was unable to stimulate RI criminal proceedings.   Shortly before or after that, Judge Lynch visited Rev. Dr. Armstrong and Gordon's premises, uninvited, with a municipal police officer, seeking the Missionary Painting under threat of criminal complaint.   19th Defendant Judge Lynch positively noticed cannabis plants on the property before or shortly after being asked to leave.

27. 19th Defendant Judge Lynch then shortly thereafter influenced Attorney General Kilmartin (1st Defendant)'s agent, an Attorney General in the Kent County RI division, to personally attend the premises of the Plaintiffs on or about June 23, 2016, threatening -- unless the Missionary painting were voluntarily yielded to Judge Lynch -- to serve a criminal search warrant for the Missionary Painting, a search in which cannabis (of which Gen. Kilmartin, Gov. Raimondo, Col. Assumpico's agents had been previously aware either expressly and directly, or impliedly

and/or constructively, for many mnoths) would, it was announced, suddenly be seen and prosecuted, suddenly owing to the Missionary Painting search warrant.

28. After the 1st Plaintiff Rev. Dr. Armstrong's subsequent refusal to transfer custody, the search warrant was served, and the Missionary Painting taken, yet no charge was filed relating to the Missionary Painting.  The art itself was sent to, handed to, or otherwise converted across State lines to the 19th and 20th Defendants, Judge Lynch and/or Dan Lynch Apostolates, instead of being entered into evidence, in certain defiance of normal criminal and police procedure.

29. During the execution of the search, police looked in areas which could not possibly hold the Missionary Painting, such as the basement refrigerator and/or freezer, where they saw cannabis scrap.

30. Police and the attending Attorney General's agent at that time and date did not seize or destroy any cannabis, but instead claimed the cannabis was unlawfully situated and/or above plant count and/or weight limits, and refused to entertain sections of the RI statute quoted at them by one or both the 1st and/or 2nd Plaintiffs which *prima facie* expressly protect such placement and amounts of cannabis.  The 1st and 2nd Plaintiffs were told to move the cannabis plants, within a period of only a day, in a way which would have been less compliant, and not moreso, with the law, however ambiguously worded.

31. On or about July 19th, 2016, after flurried attempts by the 1st and 2nd Plaintiffs to obtain protective Orders in various Courts, agents of the 1st, 2nd, and/or 3rd Defendants (Attorney

General, Governor and Police Commissioner) arrested Rev/ Drs. Armstrong and Gordon and seized materials which police reports claim became discovered in the context of searching for the Missionary Painting.

32. That search object, however, which *was* found at an earlier search, was peculiarly *not* entered into evidence the Apostolates (but was instead shipped or given to an alleged, untried criminal complainant), and the search for it was not the source of the State's knowledge of cannabis there -- Rev. Drs. Armstrong and/or Gordon having repeated given notice, different ways for many months, that cannabis was and would be present, and the police having visited with Judge Lynch previously when cannabis was seen. In other words, the State's claim of having discovered the cannabis in the course of the search was patently false.

33. 1st Defendant Attorney General Kilmartin and/or his agents, alone and/or with the 20th and/or 21st defendants (Judge Lynch and/or the Ministries, respectively) as well as unnamed agents of the 2nd and 3rd Defendants (Gov, Raimondo and Col. Assumpico) deprived both Plaintiffs of numerous plain statutory cannabis and free exercise rights (relative to others such as police or wine-Communing churches), as well as (and/or via, and/or in the context of) numerous breaches of fundamental rights to Free Exercise, Expression, Equal Protection, Due Process, Fair Trial and rights against Establishment, Excessive Bail, Cruel and Unusual Punishment and/or well as rights against defamation. This was done in the context of arrest and confiscation/destruction of religious materials.

34. Some of those rights violations occurred in open Courts as a series of serious process abuses by counsel for (or agents of) the 1st Defendant Gen. Kilmartin. These are differentiated by counsel's performance of them in open Court, rather than "in the field," and are detailed separately in Group 4 at and beyond paragraph 104 below.

35. On or about July 28th, 2016, while Rev. Drs. Armstrong and Gordon were jailed without bail, Judge Lynch and/or the Apostolates published a written account indicating religious and/or gender differences as motivating factors behind the retired Judge's significant degree of influence claimed over Attorney General Kilmartin (1st Defendant)'s official duties, including:

A. Causing the Attorney General to consider the Missionary Painting to be a criminal, rather than a civil matter, *after it was initially determined civil* by the Attorney General;

B. Search, seizure and extraordinary transfer of the Missionary Painting under color of law to the retired Judge and/or the Apostolates; and

C. Subsequent arrest and denial of bail to the 1st and/or 2nd Plaintiffs.

36. In that manner, at the very least, the 19th and/or 20th Defendants denied or sought to deny fundamental *Due Process, Fair Trial,* and/or *Search/Seizure* protections, in conjunction with the 1st Defendant Attorney General Kilmartin and/or RI police, while concurrently depriving religious exercise in the same context. In this case, it was more evidently deliberate than just blind and concurrent, and instead ranges into willful color of law rights deprivations.

GROUP 1 CONCLUSION

37. Judge Lynch and the Apostolates, Defendants 19 and 20, respectively, openly published claims that due to Rev. Dr. Armstrong (Plaintiff 1)'s and/or Gordon (Plaintiff 2)'s religious beliefs/practices and/or gender, the retired Judge bent the 1st Defendant Attorney General's functions. He did so, in conjunction with the Attorney General, in a peculiar property grab far outside legal procedures under the color of law, in a way that triggered felony arrest of the 1st and 2nd Plaintiff (of which Judge Lynch bragged), but oddly triggered neither charge, nor property receipt, of the contested property. He bent the law with the 1st Defendant Attorney General, published a boast of it, and thereby the 1st, 19th and 20th Defendants together deprived the 1st and 2nd Plaintiffs of their *Free Exercise* rights in both of the following ways:

A. relative to other parties (such as wine-Communing churches that dose children, and/or police cannabis dealers), and/or

B. in conjunction with the breach of other fundamental rights.

GROUP 2:
The Church Police -- State Police Major Kevin O'Brien, and 2 "John Does"

GROUP 2 INTRODUCTION

38. This section details the 1st and 2nd Plaintiffs' account of being attacked at Catholic Mass in a large semi-public Cathedral, by a small ring of off-duty and/or retired police (collectively called "**The Church Police**").

39. The off duty and/or retired police of the Church Police group Defendants introduced in the following paragraphs are therein depicted being recorded **dishonestly covering up,** in official and semi-official capacities, a series of rights breaches they inflicted, by attempting to officially and publicly blame Rev. Drs. Armstrong and Gordon for a fictional disturbance invented to cover up the rights breaches.

40. Defendant *Group 2's* police ringleader, 5th Defendant Maj. Kevin O'Brien, will later in the Complaint be shown in another Defendants' group, *Group 3 below* (starting at paragraph 64), to have abused rights in a separate and further State Police color-of-law abuse pattern, one based on too complex a tactical similarity to be merely co-incidental, establishing both a pattern and a nexus between the Group 2 Defendants Cathedral incident herein described, and the relevant Defendants' rights-breaching police behavior with Group 3 as well.

41. Casting a pall over the entire Group 2 Defendants list is the actions of one off-duty police officer among them who was recorded depriving rights, while using apparently false credentials and identification, in the context of intimidating a Priest by mentioning "testimony."

GROUP 2 FACTS

42. On or about April 17, 2016 – present,, the 5th Defendant Maj. O'Brien was a recently-retired State Police Detective and the Catholic Diocese of Providence's "Compliance Officer," at 80 St. Mary's Drive, Cranston RI.  As such, his duties included protecting vulnerable worshipers from Church personnel, investigating complaints of abuse, and seeing that Church safety and legal protocols were being followed.

43. The 6th and 7th Defendants, "Ofc. Doe 1" and "Mr. Doe 2" respectively, are 2 unidentified men, at least the first of whom was an off duty police officer, were present at morning Mass at the Providence RI Catholic Diocese's Fenner Street Cathedral, Sts. Peter and Paul ("The Cathedral") on Sunday April 17th 2016.

44. Ofc. Doe 1 and Mr. Doe 2's identities are not known to the Plaintiffs, who are unwilling to investigate the names prior to the men's inclusion in this Complaint, given the actions of the Church Police lawmen as described below, such as giving false credentials and identity when asked.  The identity of Defendant 6 and/or 7, however, is likely known to the 5th Defendant Maj. O'Brien and to each other, as the 3 acted in close tandem to deprive rights.  For this reason, Ofc. Doe 1 and Mr. Doe 2's Service will be to Maj. O'Brien's service address at the Diocese Compliance Office.

45. Compliance Officer Maj. O'Brien, Defendant 5, joined with Ofc. Doe 1, Mr. Doe 2 , and an

unnamed uniformed Church Security Guard to deprive the 1st and 2nd Plaintiffs of the right to

*Free Speech, Expression, Association, Exercise, Due Process, Fair Trial, Equal Protection,*

and/or freedom from Trespass against the Person and/or from Defamation at the Cathedral on

the 17th of April 2016.

46. The 6th Defendant Ofc. Doe 1 was (or identified himself as) as an **off-duty police officer** at ta

Sunday April 17th 2016 Catholic Morning Cathedral Mass, who claimed to work for the

Cathedral, and **claimed to be named "St. Peter."** The 7th Defendant Mr. Doe 2 served as an

assistant, partner or sidekick to the 6th Defendant at that date/time.

47. The 1st and 2nd Plaintiffs, with three other persons, attended Sunday April 17, 2016 morning

Mass at the Cathedral, in part for the purpose of receiving Priestly Blessings upon a politically-

intended, Papier-Mache' 2-foot long, "joint"-shaped "freedom torch" being relayed from State

to State on behalf of dying cancer and seizure disorder patients and on behalf of languishing

cannabis life sentence prisoners.  Their attendance at the Cathedral Mass for that purpose had

been promoted on social media, attracting 3 attendees besides Rev. Drs Armstrong and

Gordon.

48.  At that date and time, Defendants 6 and 7 (Ofc. Doe 1, and Mr. Doe 2), purporting to work

for the Cathedral, blocked or attempted to block the 1st and/or 2nd Plaintiffs' access to both the

Mass and the Priest, claiming that the freedom torch alone (which was making no flame or

smoke), and no other factor, would disturb the Mass.  This was a violation of the Rights to *Speech, Expression, Exercise, Association, Equal Protection,* and/or *Assembly.*  2nd Plaintiff Rev. Dr. Gordon began video-recording the incident.

49. Rev. Dr. Armstrong proceeded with her plan to attend Mass, followed by 2nd Plaintiff Rev. Dr. Gordon and his camera. Immediately, Rev. Dr. Armstrong then suffered unwanted touch from behind to the left armpit/breast area, during/in the Mass ceremony itself, by the 6th Defendant, Ofc. Doe 1, who was video-recorded doing so and informed of that fact by Rev. Dr. Gordon, still recording.

50. Defendants 6 and/or 7 then summoned a Providence RI Police Officer Slater (the son of the RI medical cannabis act's author by sheer chance) via 911 call, whose police report specifies that responding on-duty Officer Slater was speaking with an **off-duty police officer**.

51. When Mass was over, Rev. Drs. Armstrong and Gordon learning from one of their colleagues that outside the Cathedral, near the 1st Plaintiff's car, Ofc. Doe 1 (Defendant 6) was speaking to on-duty, uniformed police officer waiting there at his squad vehicle.  The police incident report indicates that the caller positively identified the 1st Plaintiff Rev. Dr. Armstrong with reference to her political and/or religious creed.

52. The 6th Defendant Ofc. Doe 1 then proceeded to shout, in a way as to lower or attempt to lower the reputation of the 1st and/or 2nd Plaintiffs in the eyes of Mass-goers leaving the Cathedral - - by implying mental defect (i.e. slanderous defamation).

Civil Action No. 16-403
*Armstrong & Gordon v Kilmartin, et al*

53. At that time, Ofc. Doe 1 interfered with both Plaintiffs' attempt to speak with, and obtain the

sought-after standard object-Blessing from, the on-duty Priest at the Cathedral and/or other

clergymen.  This interference was accomplished in 5 particularly alarming fashions:

A. Dishonestly claiming, or attempting to claim, official authorization to determine if given

individuals were welcome in the Church; and/or

B. Dishonestly claiming to police against the clear record that Rev. Drs. Armstrong and/or

Gordon had created a disturbance or been disorderly in the Cathedral; and/or

C. Dishonestly claiming that the 1st and/or 2nd Plaintiffs had been smoking cannabis in the

Cathedral, in direct contrast with Ofc. Doe 1 (Defendant 6)'s own earlier recorded

description of the event, which expressly excluded any such possibility; and

D. Interrupting a Priest's conversation with the 1st and/or 2nd Plaintiffs, Rev. Drs. Armstrong

and/or Gordon, **by saying "remember my testimony, Father;"** and

E. Furtively and/or secretively accepting furtive and/or secretive eye and hand signals from

the unidentified, uniformed Cathedral Security Guard present at that date, time and place.

54. From on or about the incident date April 17th 2016 through the next few days, Defendant 5,

Maj. O'Brien compiled an internal Diocese Compliance Officer's report against the 1st and/or