## UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

**ANNE ARMSTRONG and**
**ALAN GORDON**
        **Plaintiffs**

    **v.**                                  **C.A. NO. 16-403**

**PETER KILMARTIN, in his capacity**
**as Attorney General, et al.**
        **Defendants**

### MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
### AMENDED COMPLAINT

## I.    INTRODUCTION

Now come Defendants Peter Kilmartin, in his capacity as Attorney General for Rhode Island and Providence Plantations ("Kilmartin" or "Attorney General"); Gina Raimondo, in her capacity as Governor of Rhode Island and Providence Plantations ("Raimondo" or "Governor"); Colonel Ann Assumpico, in her capacity as Colonel of the Rhode Island State Police ("Assumpico" or "Colonel"); and Ashbel T. Wall II, in his capacity as Director of the Rhode Island Department of Corrections ("Director Wall") (collectively "the State Defendants"), and move this Court for an Order dismissing the instant action against them, for the reasons set out more fully below.

Briefly, including the case *sub judice,* these Plaintiffs have filed a total of three civil actions requesting that the state's drug laws, specifically, the state's regulatory scheme criminalizing the growth, possession or use of marijuana, be declared unconstitutional.  Also, and most relevant for this Motion is the pending state criminal prosecution against these Plaintiffs, described below.  Plaintiffs' allegations range from vagueness to constitutional deprivations occasioned by Rhode Island's Medical Marijuana Act and the state's Uniform Controlled Substances Act.

## II.     STATUTORY HISTORY

There appear to be three legislative provisions at issue in this case—the Uniform Controlled Substances Act, R.I. Gen. Laws § 21-28-1.01 et seq. ("CSA"); the Edward O. Hawkins and Thomas C. Slater Medical Marijuana Act, R.I. Gen. Laws § 21-28.6-1 et seq. ("MMA"); and R.I. Gen. Laws § 3-8-11.1(d) which exempts from alcoholic beverages regulation "the use, consumption or possession of alcoholic beverages by a minor for religious purposes."

Rhode Island's CSA has been in place in its present iteration since 1974, and the MMA was passed in 2005.  The CSA prohibits the growing, possession or use of a number of substances, broken down into "Schedules."  Marijuana is listed as one of 111 Schedule I controlled substances, under the specific heading of "hallucinogenic substances."  The possession, use or growth of marijuana outside of the CSA is a criminal offense, except as provided in section 21-28-3.30.[1] Subsection (4) exempts "persons lawfully in possession or control by reason of a proper order, prescription, license, or registration."

In the MMA, the Rhode Island General Assembly carved out a narrow exception from the CSA for the medical use of marijuana.  The MMA exists in furtherance of the police powers of the State, and recognizes that state law should recognize a distinction between the medical and nonmedical use of marijuana.  To that end, "[i]t is in the state's interests of public safety, public welfare, and the integrity of the medical marijuana program to ensure that the possession and cultivation of marijuana for the sole purpose of medical use for alleviating symptoms caused by debilitating medical conditions is adequately regulated."  R.I. Gen. Laws § 21-28.6-2.   The MMA

---

[1] Possession of 1 ounce or less of marijuana, by a person not otherwise exempted from penalties, is now considered a civil offense.  See R.I. Gen. Laws § 21-28-4.01(c)(2)(iii).  This provision is not implicated in the present case.

defines "medical use" as the "acquisition, possession, cultivation, manufacture, use, delivery, transfer, or transportation of marijuana or paraphernalia relating to the consumption of marijuana to alleviate a patient cardholder's debilitating medical condition or symptoms associated with the medical condition." R.I. Gen. Laws § 21-28.6-3(15).

The MMA establishes categories of persons and entities that may possess, use or grow marijuana without being subject to criminal penalties, and adopts the definition of marijuana found in the CSA. See generally R.I. Gen. Laws §§ 21-28.6-3 and 21-28.6-3(13). The Rhode Island Department of Health ("DOH") is authorized to issue "registry identification cards" to assist in regulating these categories. R.I. Gen. Laws § 21-28.6-6. These cards are issued only to "a quali-fying patient or a primary caregiver who has registered with [DOH] and has been issued and pos-sess a valid registry identification card." R.I. Gen. Laws § 21-28.6-3(19).[2] A qualifying patient "means a person who has been diagnosed by a practitioner as having a debilitating medical condi-tion and is a resident of Rhode Island." R.I. Gen. Laws § 21-28.6-3(18). Qualifying debilitating conditions are listed in subsection (5). A primary caregiver is defined as either a 21-year-old individual or a compassion center. R.I. Gen. Laws § 21-28.6-3(17). Individual (cardholding) caregivers are limited to assisting only 5 qualifying patients with their medical use of marijuana. Id. There are no other categories of people allowed to possess, grow or use marijuana, as alleged by these Plaintiffs.

Also designated as potential cardholders are compassion centers and compassion center cardholders, sometimes colloquially referred to as "dispensaries" and their officers and employees. R.I. Gen. Laws § 21-28.6-3(4).   The cards issued under this subsection are not for the use of

---

[2] It is undisputed that neither Plaintiff possesses any type of card issued pursuant to the MMA. See, Exhibit F, p. 14, 15, 19, 21, 22-23, 25, 35-37, 39. See also Exhibit M, Affidavit of Gordon, filed in Kent County KC 16-0599, para. 18.

marijuana—rather for the "business" end of growing and distributing what would otherwise be criminal under the CSA.

### III.   PROCEDURAL BACKGROUND

#### A.   The Instant Federal Complaint

On July 15, 2016 Plaintiffs Anne Armstrong and Alan Gordon, *pro se*, filed what they described as a Constitutional Action for Injunctive Relief against Peter Kilmartin, in his capacity as Attorney General for the State of Rhode Island.  On November 16, 2016 they filed an "Amended Action for Injunction and Damages For Deprivation of Constitutional Rights By Public Official Corruption Ring Coupled With Systemic Pre-Trial Process Abuse Pattern" ("Amended Complaint") (Docket Entry No. 8), attached to a Motion for Leave to Amend.  The Court granted the Motion to Amend.  (Docket Entry, 12/6/16, Text Order).  The Amended Complaint adds nineteen new Defendants, including the State Defendants.

The Amended Complaint lumps the Defendants and the causes of action into four "groups." (Docket Entry No. 8, Doc. 8-2, page 16, Amended Complaint, para. 16).  Group 1 is "Retired VT Judge Dan Lynch and Attorney General Kilmartin." Id. page 16.  Group 2 is "The Church Police— State Police Major Kevin O'Brien, and 2 'John Does'."  Id. page 25.  Group 3 is denominated as "Slater Group Defendants." (Docket Entry No. 8, Doc. 8-3, page 4).  Finally, Group 4 is not so much a group of persons, but a grouping of allegations surrounding Plaintiffs' stay at the ACI and the conduct of their criminal proceedings.  Id. page 18.

The Amended Complaint is rambling and difficult to decipher, but when distilled to its purest form it is clear that it cannot survive this Motion, as it seeks an injunction against a pending criminal prosecution.  Further, this Court lacks jurisdiction, Plaintiffs lack standing, and these Defendants are immune from suit.  Finally, this iteration of their claim, like the first, is indecipherable and, pursuant to Rule 8 of the Federal Rules of Civil Procedure, should be dismissed.

Plaintiffs describe themselves as clergy serving The Healing Church ("THC") who use cannabis in conjunction with their religious beliefs.  In their overly narrative and editorial filing, Plaintiffs admit that on July 19, 2016 they were arrested and charged with drug felonies under Rhode Island law.  (Docket Entry No. 8, Amended Complaint, para. 6A).  The Amended Complaint mentions "42 US Code § 1983" once and invokes numerous constitutional sections, among them the due process, fair trial, equal protection, unwarranted search and seizure, excessive bail, cruel and unusual punishment, free association, free exercise and establishment clauses.  The end of the Amended Complaint makes it clear that none of the allegations can be maintained against any of the State Defendants.  Id. at para. 123.  Their request for an injunction and dismissal of the ongoing State Court criminal prosecution should not be entertained, pursuant to the doctrine of abstention explained in Younger v. Harris, 401 U.S. 37 (1971).  Their claim for damages cannot be maintained against any of the State Defendants, who have all been sued in their official capacity.

**B.   The Previous Federal Complaint, Anne Armstrong and Alan Gordon v. Sally Jewell, in her capacity as US Secretary of the Interior; Jonathan B. Jarvis, in his capacity as Director of the US National Park Service; and Jennifer Smith, in her capacity as Site Manager for Roger Williams National Park, No. 1:15-cv-00215-ML-PAS (D.R.I.).**

Plaintiffs are no stranger to this Court.  On May 21, 2015 they filed a Complaint over allegations of mistreatment at the Roger Williams National Memorial in Providence.  Specifically, Plaintiffs sought an injunction against the federal government, seeking to preclude governmental

interference with their planned "cannabis-related religious activity" at the Roger Williams National Memorial, part of the United States National Park Service and therefore located on federal property. The federal defendants moved to dismiss, and this Court granted that motion. In making that determination, this Court relied on the Federal Religious Freedom Restoration Act (RFRA), which is not applicable to the states. However, the basis for that holding supports the State Defendants' argument in this case.

First, this Court queried whether the federal ban on marijuana use "substantially burdened" Plaintiffs' religious exercise, noting that "a 'substantial burden' is imposed only 'when individuals are forced to choose between following the tenets of their religion and receiving a governmental benefit… or coerced to act contrary to their religious beliefs by the threat of civil or criminal sanctions…'". Armstrong and Gordon v. Jewell, et al., 151 F.Supp.3d 242 (D.R.I. 2015), *appeal docketed*, No. 16-1058 (1st Cir. January 12, 2016). This Court recognized that the First Circuit has "accepted the 'congressional determination that marijuana in fact poses a real threat to individual health and social welfare.'" Id. at 249 (citations omitted). The Court then dismissed the case on the grounds that Plaintiffs failed to show that their exercise of religion was dependent on a particular service at the Roger Williams Memorial. Id. at 250.

### C. The Pending Superior Court Criminal Prosecution, State of Rhode Island v. Anna Vrankar[3] and Alan Gordon, K2/2016-0596A and B.

On July 19, 2016, after obtaining a search warrant, members of the Rhode Island State Police High Intensity Drug Trafficking Area Unit (HIDTA) went to Plaintiffs' residence, seizing evidence (plants, oil and paraphernalia) and arresting the Plaintiffs. Anne Armstrong and Alan

---

[3] The name Anne Armstrong is listed as an alias for Anna Vrankar on the Criminal Information sheet.

Gordon were each charged under R.I. Gen. Laws § 21-28-4.01(a)(4)(i) with two counts of delivery/possession with the intent to deliver and manufacturing a controlled substance (felony); and § 21-28-4.01.2(a)(5), which makes it a felony to possess more than five (5) kilograms of marijuana. (Exhibit A, Criminal Information).  Prior to the arrest it was determined (consistent with the documents filed in this court) that neither Armstrong nor Gordon had obtained a valid Medical Marijuana Patient or Caregiver card.[4]  Seized that day from the Plaintiffs' residence were forty-one (41) marijuana plants growing in the back yard; twelve (12) marijuana plants growing in a second fenced-in area and an additional six (6) plants in a kennel-like enclosure.  A total of fifty-nine (59) plants were seized.  Inside the residence the following items were seized: "a jar and a dish containing Butane Hash Oil (BHO) from the kitchen counter, a jar containing dried marijuana and a digital scale on the kitchen table, two (2) jars containing additional dried marijuana, a stainless steel pressure cooker with three (3) bottles of Grain Alcohol which is used in the process to manufacture BHO and assorted paperwork…four large glass jars with dried marijuana…two (2) clear plastic bags containing marijuana and thirteen (13) jars and one bag containing BHO."  (Exhibit B, Narrative of RISP Investigator William Demers).  The criminal charges remain pending in Kent County Superior Court, with the Plaintiffs arguing that their religious beliefs provide a defense. Their next Pre-trial date is January 19, 2017.

---

[4] Neither Plaintiff has sought certification of any kind under the MMA – whether as a patient, caregiver, or compassion center.  See, "Complaint" Armstrong and Gordon v. Kilmartin, D.R.I. No. 16-403ML, (Docket Entry No. 1).  On page 15 of that pleading, Plaintiffs explain that they won't enroll in any "cannabis ban exemption lists" to include, presumably, the MMA, because of an objection to "census."

### D. The Washington County Superior Court Action, <u>Anne Armstrong and Alan Gordon v. Lincoln Chafee, in his capacity as Governor of Rhode Island,</u> WCSC No. 2014-0611.

On October 27, 2014, Anne Armstrong, Alan Gordon and Jane Doe[5] filed suit against then-Governor Lincoln Chafee, in his official capacity. (Exhibit C, Complaint)[6]. That Complaint describes Plaintiff Armstrong as a licensed medical cannabis patient since "about 2009" and a licensed grower and caregiver since "about Spring 2011." <u>Id.</u> at para. 1. Gordon is described as a cannabis expert, having a felony cannabis cultivation conviction in the State of Georgia in 2004, for which he was pardoned, as well as two misdemeanor cannabis possession convictions from 1998 in Pennsylvania. <u>Id.</u> at para. 2 and para. 7. In addition, their Complaint alleges that Gordon had an expunged federal cannabis possession charge from 1994, and other instances where he has turned himself in for cannabis possession or cultivation in 1993, 1996 and 1997, where he was either not charged, or charged and acquitted. <u>Id.</u> at para. 7.

The Complaint continues, touting the healing benefits of marijuana and oil, then alleging that the plant limits imposed by the MMA make it impossible to produce enough oil to successfully treat a "patient." <u>Id.</u> at para. 19. The Plaintiffs continue, pointing out areas where they believe the regulatory scheme is unwise. They ask for a jumble of declarations and relief, one of which concerns their First Amendment Rights. This action is pending. (Exhibit D, Docket, WC-2014-0611).

---

[5] The Third Plaintiff was not given permission to proceed as a "Doe."
[6] Although the caption states Providence County, it was filed in Washington County, as evidenced by the Superior Court stamp on page 1.

**E.  The Kent County Superior Court Action, <u>Anne Armstrong and Alan Gordon v.</u>
<u>State of Rhode Island, Town and Police Department of East Greenwich, and Kent</u>
<u>County Attorney General,</u> KCSC No. 2016-0599**.

This case began in June of 2016 with Plaintiffs filing a request for an "emergency declaratory judgment," seeking a definition of "inside" as that term is used in the MMA, and challenging the constitutionality of—as they see it— "preferring" one type of substance-based religious practice over another. (Exhibit E, Complaint, para. 1).  Plaintiffs also sought an injunction temporarily barring the irrevocable destruction of living cannabis plants that have since been seized from their residence.  <u>Id.</u> at para. 2.

On June 24, 2016, the Kent County Superior Court heard and denied Plaintiffs' Request for a Temporary Restraining Order.  On July 6, 2016, the Superior Court conducted a hearing on Plaintiffs' Request for a Preliminary Injunction. (Exhibit F, Transcript).  During that hearing, the Superior Court attempted to have the Plaintiffs articulate exactly what law or laws they were challenging, and why.  Plaintiff Gordon answered that they are challenging a pair of laws, the general cannabis ban statute (CSA) and the statute allowing children to drink sacramental wine.  <u>Id.</u> at p. 12-13, 25.  Plaintiffs also repeatedly took issue with the Medical Marijuana Act, and vociferously objected to the State's use of the word "marijuana."

The Superior Court, Rubine, J., began by finding that Plaintiffs "are sincere and bona fide in their beliefs of the religious significance of cannabis" and that they did not have to present evidence on that issue.  <u>Id.</u> at p. 5, 20.  The issue, as the Court framed it, was that Plaintiffs were contending that regulation of medical cannabis interferes with their religious beliefs and free exercise, necessitating an evidentiary record supporting their contention that enforcement of the laws are not neutral and are designed to be aimed at Plaintiffs' religious beliefs specifically.  <u>Id.</u> at p. 17, 20.  Plaintiffs offered their own testimony in support of their request for injunctive relief.  The

transcript confirms that neither Plaintiff holds any kind of "card" under the MMA.  As an expla-

nation, Plaintiff Gordon explained that they may not register for a "census."  Id. at p. 19, 21, 35-

36.  From there, Gordon testified that his "evidence" was that the original intent of the Controlled

Substances Act was racial and religious and ethnically discriminatory, and was authored by a Ger-

man spy.  Id. at p. 27-28, 83.

The Superior Court denied Plaintiffs' Request for a Preliminary Injunction, noting that this

is a legal issue, and that, at that juncture, it was undisputed that both the MMA and the CSA are

facially neutral with respect to the Plaintiffs' religion.  The Court continued, holding that those

statutes are facially neutral in respect to religion and of general applicability to all citizens of Rhode

Island.  Id. at p. 94.   An Order denying the requested injunctive relief entered on July 12, 2016.

(Exhibit G, Order).

On July 14, 2016 Armstrong sought review of the Superior Court's denial as well as a stay

from the Rhode Island Supreme Court via a Petition for Writ of Certiorari.  The duty justice de-

clined her request, finding that she had not established a likelihood of success on the merits.  Con-

tinuing, the duty justice noted that because the MMA "is a neutral, generally applicable law, this

claim likely fails under controlling precedent from the United States Supreme Court. See, Employ-

ment Division, Department of Human Resources v. Smith, 494 US 872, 878-82 (1990)."  Anne

Armstrong v. State of Rhode Island et al., Supreme Court No. 2016-187.  (Exhibit H, Order, July

14, 2016).  Armstrong returned to the Supreme Court the next day.  The Court ordered:

> Pursuant to a petition for writ of certiorari and motion for reconsideration of the
> duty justice's denial of petitioner's motion for a stay of an order of the Superior
> Court.  After consideration of the motion and the additional document filed con-
> temporaneously therewith, the motion for reconsideration is denied.

Anne Armstrong v. State of Rhode Island et al., Supreme Court No. 2016-187.  (Exhibit I,
Order, July 15, 2016).

Then, on September 9, 2016 the full Court denied Plaintiffs' Petition for the Issuance of a

Writ of Certiorari. Anne Armstrong v. State of Rhode Island et al., Supreme Court No. 2016-187.

(Exhibit J, Order, September 9, 2016).  This action is pending in the Superior Court.  (Exhibit K,

Docket, KC-2016-0599).

## IV.    STANDARD OF REVIEW

A motion to dismiss for failure to state a claim upon which relief may be granted is gov-

erned by Fed. R. Civ. P. 12(b)(6), and jurisdictional defects by Rule 12(b)(1).  To survive a motion

to dismiss under Rule 12(b)(6), "the complaint must contain sufficient factual matter, accepted as

true, to 'state a claim to relief that is plausible on its face.'" Cunningham v. National City Bank,

588 F.3d 49, 52 (1st Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662 (2009).  In considering a

motion to dismiss a complaint, the Court "must construe the complaint in the light most favorable

to the plaintiff, taking all well-pleaded facts as true, and giving the Plaintiff the benefit of all rea-

sonable inferences.  Arruda v. Sears, Roebuck & Co., 310 F.3d 13 (1st Cir. 2002).  In order to

withstand a motion to dismiss, a claim "must contain sufficient factual matter ... to state a claim to

relief that is plausible on its face."  Katz v. Pershing, LLC, 672 F.3d 64, 72–73 (1st Cir. 2012).

The court is not required to accept conclusions or interpretations of law unsupported by the facts

alleged. Estate of Bennett v. Wainwright, 548 F.3d 155, 162 (1st Cir. 2008).  Similarly, speculative

labels are insufficient; a plaintiff must plead specific facts showing a legal right to relief.  Bell

Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  The complaining party must include "fac-

tual content that allows the court to draw a reasonable inference" in the pleader's favor. Id. The

Court ignores, however, "statements in the complaint that simply offer legal labels and conclusions

or merely rehash cause-of-action-elements." Schatz v. Republican State Leadership Comm., 669

F.3d 50, 55 (1st Cir. 2012).  Ordinarily, of course, any consideration of documents not attached to

the complaint, or not expressly incorporated therein, is forbidden, unless the proceeding is properly converted into one for summary judgment under Rule 56. See Fed.R.Civ.P. 12(b)(6). Watterson v. Page, 987 F.2d 1, 3 (1st Cir.1993). However, courts have made narrow exceptions for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." Watterson v. Page, 987 F.2d 1, 3 (1st Cir.1993).

Generally, *pro se* plaintiffs' pleadings are held to less stringent standards than those of lawyers, Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the First Circuit has "required even *pro se* plaintiffs to plead specific facts backing up their claims of civil rights violations." Glaros v. Perse, 628 F.2d 679, 684 (1st Cir. 1980). The Amended Complaint on file herein is nothing but a mishmash of conclusory allegations that have been raised in other venues, including in a criminal proceeding in State Court. Those allegations show that Plaintiffs disagree with the statutory scheme created to regulate the medical marijuana industry, but nothing more. Therefore, the State Defendants respectfully request that the instant Motion to Dismiss be granted.

## V.  **ARGUMENT**

### A.  **Younger Abstention Applies to Bar the Instant Cause of Action, as the Plaintiffs have Two Civil and One Criminal Case Pending in Rhode Island Superior Court.**

As described above, Plaintiffs have filed a Superior Court action seeking the same relief they seek in this Court. Further, there is an active criminal case being prosecuted for violations of the Controlled Substances Act. Plaintiffs are raising their religious beliefs as a defense to that prosecution. As a general matter, "comity constrains the exercise of federal jurisdiction in cases implicating a variety of important state interests. This includes cases that would interfere with a state criminal proceeding." Coors Brewing Co. v. Mendez-Torres, 678 F.3d 15, 23 (1st Cir. 2012) (citations omitted).

The Supreme Court decided in the case of <u>Younger v. Harris</u>, 401 U.S. 37 (1971), that where a state proceeding is pending and a party attempts to raise related federal constitutional issues in a federal court, the federal court should refrain from taking action; the constitutional claims should be raised and decided in the state court without interference by the federal courts. In <u>Younger</u>, John Harris, Jr. was charged under the California Criminal Syndicalism Act and was being prosecuted by the District Attorney of Los Angeles County.  <u>Id.</u> at 38.  Harris filed a complaint in Federal District Court asking the court to enjoin the D.A. from prosecuting him, claiming that the prosecution and the Act itself violated his constitutional rights under the First and Fourteenth Amendment. <u>Id.</u>  The court noted that a "federal lawsuit to stop a prosecution in state court is a serious matter." <u>Id</u>.  at 42.  The Supreme Court recognized the importance of what it called 'Our Federalism,' stating that the "entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." <u>Id.</u> at 44. The Court ruled against Harris finding that under the doctrine of federalism, the Court should refrain from issuing an injunction unless the plaintiff can show that the potential harm is "both great and immediate." <u>Id.</u> at 46.  The Court further elaborated that this was especially true for Harris because he could have raised the same constitutional defenses he raised in the federal claim in the state prosecution case.  <u>Id.</u>

<u>Younger</u> abstention is appropriate (and mandatory) when the requested relief would interfere:  "(1) with an ongoing state judicial proceeding; (2) that implicates an important state interest; and (3) that provides an adequate opportunity for the federal plaintiff to advance his federal [claim]." <u>Rossi v. Gemma</u>, 489 F.3d 26, 34-35 (1st Cir. 2007).  These Plaintiffs have made no allegations that would bring into question any of these elements.

1.   Plaintiffs Seek to Interfere with State Court Proceedings.

Paragraph 123 of the Amended Complaint asks for a stay and dismissal of the ongoing state court criminal prosecution, among other relief.  This is the quintessential scenario for the application of Younger abstention.  The core issue raised in their defense is their belief that they must use marijuana in conjunction with their religious observances.  Those arguments should be made, and responded to, in only one forum.

2.   Rhode Island's Controlled Substances Act and Medical Marijuana Act Implicate Important State Interests.

It is hard to comprehend a more important state interest than regulating drugs.  The legislature of the State of Rhode Island has made it clear that marijuana is a Schedule I controlled substance—the most serious.  However, it has allowed a very narrow and focused carve out for medical marijuana.  That exception cannot be claimed by anyone with an illness, or anyone who wants to grow marijuana for others who are sick.  There is a statutory process to obtain licensure.  Neither of these Plaintiffs hold any kind of authorization to use or grow marijuana in any amount.  Even if they did, the amount seized in the criminal case exceeded the statutory limit.  Further, in another context, the First Circuit has noted that "[a] state's judicial system is an important cog in its governmental apparatus…".  Brooks v. New Hampshire Supreme Court, 80 F.3d 633,638 (1st Cir. 1996).  Here, the Rhode Island Criminal Justice System should be allowed to perform its very important work—adjudicating criminal cases.

3.   The Rhode Island State Courts Provide Adequate Opportunity for the Plaintiffs to Advance Their Federal Claims.

There is a basic presumption that state courts are fully capable of safeguarding federal constitutional rights.  See, Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 431 (1982); Bettencourt v. Board of Registration in Medicine, 904 F.2d 772, 776 (1st Cir.

1990; <u>Brooks</u>, <u>supra,</u> at 639.  "Absent some clear reason to think otherwise, the court must and does assume that state procedures will afford an adequate remedy."  <u>McKenna v. DeSisto</u>, 2012 WL 4486268, at *4 (D.R.I. Sept. 27, 2012).  These plaintiffs have not alleged that the Superior Court of Rhode Island will not safeguard any constitutional rights that they invoke.  Even if they had, those allegations would be the type of conclusory, vapid allegations that permeate the entirety of their Complaint.

The facts in this case follow the same general fact pattern found in <u>Younger</u>.  Like the criminal defendant in <u>Younger</u>, the Plaintiffs have been arrested and charged under a state criminal statute banning the manufacture, possession and use of controlled substances.  The Plaintiffs are seeking to enjoin the state criminal proceeding on the basis of its constitutionality through a federal complaint.  As in <u>Younger</u>, these same constitutional arguments could be raised as a defense in the state prosecution, and the instant Amended Complaint should be dismissed.

**B.   The State Defendants, Sued Only in Their Official Capacity, Are Immune From An Action For Damages.**

On a single page of their 56 page, 123 paragraph Amended Complaint, Plaintiffs write "42 US Code § 1983."  The United States Supreme Court in <u>Will v. Michigan Department of State Police</u>, 491 U.S. 58, 62-70 (1989) ruled that a state is not a "person" within the meaning of 42 U.S.C. §1983.  As a state is not a "person" amenable to suit for money damages, neither are state officials acting in their official capacities.  <u>Will</u>, 491 U.S. at 71 (1989).  Therefore, damages may only be awarded against governmental defendants acting in their individual, not official, capacities.  Even then, a Plaintiff must allege some act or inaction specific to the named Defendant.  Here, references to the involvement of the official capacity Defendants are few, but they clearly refer to their actions *qua* officials, and allege nothing specific.  Any claim for damages against The State Defendants should therefore be dismissed.

### C.  Any Action Against the State Defendants Is Barred by The Eleventh Amendment

If this Court reads the Amended Complaint as alleging a federal cause of action, it would be for naught, as the action is barred under the Eleventh Amendment to the United States Constitution, which provides as follows:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecutes against one of the United States by citizens of another state or by citizens or subjects of any foreign state.

Although the above language only refers to citizens of another state or a foreign state, the United States Supreme Court has interpreted the Eleventh Amendment also to bar suits against a state brought by its own citizens in federal court, absent consent by the state.  Seminole Tribe of Florida v. Florida, 517 U.S. 44, 54 (1996); Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98-103 (1984).  This immunity exists not only for the state, but also for its agencies and its officials sued in their official capacities.  Edelman v. Jordan, 415 U.S. 651, 666-667 (1974).  In addition, the immunity applies in suits based on federal question jurisdiction as well as on diversity jurisdiction.  Seminole Tribe, 517 U.S. at 53.

If this Court were to find federal question jurisdiction, the State Defendants would be immune from suit in federal court.  Because State Defendants are sued in their official capacities, they are entitled to immunity under the Eleventh Amendment.  Further, there are no allegations that the State Defendants have waived the immunity or consented to being sued in federal court.

An exception to the Eleventh Amendment exists for a suit that seeks prospective relief against a state's ongoing constitutional violation, provided it names a state official as the defendant.  This exception is commonly known as the Ex parte Young exception.  Edelman, 415 U.S. at 664-666; Ex parte Young, 209 U.S. 123, 159-60 (1908).  The Ex parte Young exception allows for a lawsuit against a state official in his individual capacity—that is, outside the scope of his

official duties—to be prosecuted in federal court if the claim is limited to an injunction against the official preventing him from enforcing an unconstitutional state law.  Id. at 166.  The Ex parte Young exception rests on a "fictional distinction" between the state and a state official such that if the official is enforcing an unconstitutional statute, he is considered to be operating outside his official capacity and can be sued as an individual to enjoin him from such enforcement.  Pennhurst, 465 U.S. at 114.  As an individual acting outside of his official duties, the official is not considered an arm of the state and is not entitled to Eleventh Amendment immunity.

As the Amended Complaint indicates, the State Defendants were all sued in their official capacity.  There are no allegations that any of them acted outside the scope of their official duties or that prospective relief is necessary to stop conduct resulting in ongoing constitutional violations.  Indeed, Plaintiffs were specific as to what the State Defendants did *not* do:  they did not arrest the Defendants (Docket Entry No. 8, Amended Complaint, para 8); and their actions were not in bad faith. Id. at para. 13.  As such, the Ex parte Young exception is inapplicable and the State Defend-ants are entitled to Eleventh Amendment immunity.

### D.  The Attorney General Is Immune From Suit.

In addition to the foregoing, the Attorney General is immune from suit when acting as a prosecutor, and as the State's attorney defending civil lawsuits.  Specifically, in this case at all times the Attorney General has, and still is, prosecuting these Plaintiffs for violating the CSA.  Plaintiffs specifically allege that some of the constitutional violations alleged occurred in open court. Id. at 34.

Although the Supreme Court has been "quite sparing" in its grant of absolute immunity, Forrester v. White, 484 U.S. 219 (1988), the Court has recognized that "there are some officials whose special functions require a full exemption from liability." Butz v. Economou, 438 U.S. 478 (1977).  One such official is the government's prosecuting attorney, when performing acts "intimately associated with the judicial phase of the criminal process."  Imbler v. Pachtman, 424 U.S. 409 (1975).  Here, Plaintiffs seek to control the use of evidence (seized plants) and other aspects of the Attorney General's prosecutorial function.  The law does not allow this.  This immunity also attaches when the Attorney General is defending a civil suit.  See, Seguin v. Bedrosian, 2013 WL 367722 (Order, D.R.I. Civil No. 12-614, Jan. 30, 2013) ("To the extent that [Plaintiff] seeks declaratory or injunctive relief against Kilmartin to prevent him from participating in, or to direct his conduct in, state court proceedings that involve her, those claims are subject to Younger abstention").

### E.   Plaintiffs Have Alleged No Cause Of Action Against The Governor.

Plaintiffs' Amended Complaint mentions the Governor in three instances: when a member of her staff contacted and conversed with the Plaintiffs; when the Governor introduced a budget (Docket Entry No. 8, Amended Complaint, para. 92); and as the appointing agency of the Colonel of the Rhode Island State Police.  Id. at para. 76.  None of their allegations against the Governor rise to the level of constitutional deprivation.  Additionally, they lack standing to challenge budgetary provisions.

**F.   Plaintiffs Cannot Maintain This Action Against Director Wall.**

Plaintiffs place Director Wall in "Group 4" of their Amended Complaint beginning with paragraph 104.   Like the other State Defendants, Director Wall is sued in his official capacity only, so all allegations against him should be viewed through that lens.  Specifically, neither Plaintiff is incarcerated, so no injunctive relief is possible.   In summary, Plaintiffs complain of their placement in psychiatric segregation during their few days at the ACI, and of Plaintiff Gordon's conditions of confinement.

As this Court is well aware, the classification and placement of inmates at the ACI creates no enforceable liberty interest, and is at the unfettered discretion of the Director.  <u>Meachum v. Fano</u>, 427 U.S. 215 (1976); <u>Olim v. Wakinekona</u>, 461 U.S. 238 (1983); <u>Bishop v. State,</u> 667 A.2d 275 (R.I. 1995).  Plaintiffs' placement in psychiatric segregation for a short period of time is thus not actionable.

As far as the conditions during Gordon's incarceration, all such allegations must be grieved before a federal action may be commenced.  The Prison Litigation Reform Act of 1995 ("PLRA"), amended 42 U.S.C. § 1997e(a), provides in its entirety:

> No action shall be brought with respect to <u>prison conditions</u> under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such <u>administrative remedies as are available are exhausted</u>.  (Emphasis added).

Plaintiffs have failed to allege that either of them filed a grievance while they were incarcerated.  Since they did not, they failed to exhaust their administrative remedies, and no cause of action against Director Wall, in his official capacity (or in any other capacity) is possible.  Therefore, the claims against him should be dismissed.

### G.  The Amended Complaint Fails To State A Claim Against Colonel Ann Assumpico.

The Amended Complaint is nearly silent as to Colonel Ann Assumpico.  Plaintiffs allege

no wrongdoing or negligence against her.  Plaintiffs expressly indicate that they are not alleging

that she arrested them (Docket Entry No. 8, Amended Complaint para. 8) or that she acted in bad

faith (Docket Entry No. 8, Amended Complaint para. 13).  She, like the other State Defendants,

is sued in her official capacity only, the paragraphs that mention her are conclusory in nature,

and it is unclear what relief Plaintiffs seek against her.  They have truly failed to state a claim,

and the Amended Complaint should be dismissed as to her.

### H.  Neither The State's Medical Marijuana Act, Nor Its Controlled Substances Act Deprive Either Plaintiff Of Their Free Exercise Rights, Or Any Other Federally Protected Right.

Throughout their pleadings in federal and state courts, civil and criminal, Plaintiffs refer-

ence the inequity of the State's drug laws, claiming that they fail to contain an exception for reli-

gious use similar to that contained in R.I. Gen. Laws § 3-8-11.1(d).  That section contains an ex-

ception to the prohibition on furnishing or procuring alcoholic beverages for underage persons,

and paves the way to allow use of sacramental wine during certain religious ceremonies.

Plaintiffs explain that because of their religious objections to "census"—which they equate

to licensing, neither Plaintiff presently carries any license or card issued under Rhode Island's

Medical Marijuana Act.  (Docket Entry No. 1-2, Gordon Affidavit to Original Complaint, para.

20).  Obtaining a card for themselves on their own behalf or as caregivers would allow them to

grow and/or possess a small amount of marijuana.  However, they refuse to avail themselves of

that opportunity.  Instead, they claim constitutionally prohibited inequity in the State's MMA and

CSA.  The neutrality and generally applicable nature of the MMA has already been determined by

the Rhode Island Supreme Court, in a lawsuit by these same parties.  See Exhibit H.   It cannot be

argued that the CSA is any less neutral or generally applicable than the MMA.

**1.   Plaintiffs' Dissatisfaction Lies With Rhode Island's Uniform Controlled Sub
stances Act, R.I. Gen. Laws § 21-28-1.01 et seq.**

Plaintiffs ask this Court to stay and dismiss an ongoing State Court criminal prosecution.

(Docket Entry No. 8, Amended Complaint para. 123).    Any enforcement action for growing

marijuana outside of the limited exception provided by the MMA (not applicable to these Plain-

tiffs) are garden variety drug offenses governed by the Uniform Control Substances Act.   The

Rhode Island General Assembly enacted the CSA:

(1) To establish a more rational system of regulating substances which may pose a dan-
ger to the public health;

(2) To create a system for classifying the substances relative to their abuse potential, their
medical utility, and their likelihood of creating dependency;

(3) To fix penalties for the sale, possession, or manufacture of substances which are in
proportion to their danger to the public health;

(4) To develop a system of tracing the flow of substances in commerce and in health as to
prevent their improper diversion;

(5) To establish and define the powers of investigation, enforcement, and adjudication
required to implement the above purposes; and to establish a system of substances
control which is, to the extent possible, uniform with the laws of the United States
and of its states.

R.I. Gen. Laws § 21-28-1.01.

The Rhode Island Director of Health is tasked with placing substances on various "sched-

ules" according to specifically delineated criteria.  Marihuana is listed as a Schedule I drug, un-

der the subheading "Hallucinogenic Substances."  R.I. Gen. Laws § 21-28-2.08(d)(10).  Outside

of the very strict parameters of the MMA, there are no exceptions allowing for the growth, pos-

session or use of marijuana.

**2.    Neither the Medical Marijuana Act nor the Controlled Substances Act Violates the United States Constitution.**

A state's legislative enactments carry a strong presumption of validity, and a plaintiff can only overcome this presumption by showing "that there exists no fairly conceivable set of facts that could ground a rational relationship between the challenged classification and the government's legitimate goals." See Eulitt v. Me. Dep't of Educ., 386 F.3d 344, 356 (1st Cir. 2004). Should this Court read the Amended Complaint with enough liberality as to find a procedural vehicle to sustain it, the State submits that both the MMA and the CSA are constitutional, and do not violate any constitutionally protected right of either of these Plaintiffs.  Nowhere in the Amended Complaint is there any basis for Plaintiffs' contention that they must use marijuana in their worship services, or that by being prevented from doing so, they are "substantially burdened" in any protected religious exercise. Nor do they allege a deprivation when they are compared to churches that use wine in their religious observances, or to their unclear role in assisting others with heath care issues.

Indeed, the Amended Complaint wafts between religion and health care in their description of the activities engaged in and Plaintiffs' ultimate purpose.  Gordon alleges that Plaintiffs' use of cannabis plus prayer and religion has caused healing, and the use of cannabis fits Plaintiffs' understanding of Catholic medical ethics.  See generally Gordon Affidavit to Original Complaint, Docket Entry 1-2, para. 21, 25, 32.  Indeed, Armstrong and Gordon have filed Articles of Incorporation for "The Healing Center" (HTC) seeking non-profit status.[7]  The stated

---

[7] On November 22, 2016, the Secretary of State sent Plaintiff Armstrong a Revocation Notice for Failure to File an Annual Report (attached as part of Exhibit L).  Plaintiff Armstrong also filed Articles of Incorporation for the "New England Cannabist Anti-discrimination Taskforce," the stated purpose is to "educate, defend and empower Cannabists so that we might understand and assert our rights with job and with the laws of men; to educate, inform and enlighten non-cannabists, so that the persecution of believers shall cease and the healing of the Nations can begin."

purpose of THC is "[t]o educate and empower people to use cannabis and other healing plants to recover from cancer and other serious illnesses.  (Exhibit L, Articles of Incorporation; See also R.I. Secretary of State website- http://ucc.state.ri.us/CorpSearch/CorpSearchSummary.asp?Read-FromDB=True&UpdateAllowed=&FEIN=001316216.

Plaintiffs are, in essence, asking that this Court allow them to engage in an activity that violates both State and Federal Law.  Our Supreme Court has long recognized that an individual has an absolute freedom to believe in and profess whatever religious doctrine the individual wishes; however, the freedom to act under that religious doctrine remains subject to regulation for the protection of society.  See Cantwell v. State of Connecticut, 310 U.S. 296, 303 (1940).  When a law is challenged as interfering with religious conduct, the constitutional inquiry involves a three question test: (1) whether the challenged law interferes with free exercise of a religion; (2) whether the challenged law is essential to accomplish an overriding governmental objective; and (3) whether accommodating the religious practice would unduly interfere with fulfillment of the governmental interest. See United States v. Rush, 738 F.2d 497, 512 (1st Cir. 1984).

In Rush, the Appellants were appealing a conviction of one or both counts under a two-count indictment charging them with (a) conspiracy to possess marijuana with intent to distribute, 21 U.S.C. §§ 846 & 841(b)(6), and (b) possession of marijuana with intent to distribute, 21 U.S.C. §§ 841(a)(1) & 841(b)(6).  See Rush at 500-01.  The Appellants claimed that they were denied the opportunity to raise the defense that their rights under the Free Exercise Clause of the First Amendment were violated.  Id.  Using the aforementioned test, the Court found "that accommodation of religious freedom is practically impossible with respect to the marijuana laws." Id. at 513.  The Court determined that there was an overriding government interest in regulating marijuana.  Id. The Court found that Congress has shown beyond a doubt that it views marijuana to have a grave

threat to the health and well-being of the American people.  Id.  The Plaintiffs in this case have

provided absolutely no reason for this Court to depart from the precedent already established.

From the very first time the Supreme Court had the occasion to interpret and apply the Free

Exercise Clause, it has emphasized that while government cannot regulate belief, it can criminalize

religiously motivated action.  Reynolds v. U.S., 98 U.S. 145 (1878).  Upholding the applicability

of a law criminalizing polygamy and the conviction of a devout Mormon who believed he had to

marry a second wife or risk eternal damnation, the Supreme Court wrote:

> Can a man excuse his practices [contrary to law] because of his religious belief?
> To permit this would be to make the professed doctrines of religious belief superior
> to the law of the land, and in effect to permit every citizen to become a law unto
> himself.  Government could exist only in name under such circumstances.

Id. at 166-167.

In affirming the conviction, which carried with it a five-year prison term, the Court wrote:

> …when the offense consists of a positive act which is knowingly done, it would be
> dangerous to hold that the offender might escape punishment because he religiously
> believed the law which he had broken ought never to have been made.  No case, we
> believe, can be found that has gone so far.

Id. at 167.

Further, the Free Exercise Clause does not excuse an individual from compliance with an

otherwise neutral and valid law of general applicability prohibiting conduct that the State is free

to regulate.  See Employment Div., Dep't of Human Res. of Oregon v. Smith, 494 U.S. 872, 879

(1990).  A challenge to a neutral and valid law of general applicability need not be justified by a

compelling government interest incidental effect of burdening a particular religious practice.  Id.

at 883.

In determining the neutrality of the law, the Court looks to the object or purpose of a law.

See Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520, 533 (1993).  A law

is not neutral if it infringes upon or restrict practices because of religious motivation.  Id. at 533.  The Plaintiffs have not provided any evidence to show that the MMA was enacted on the basis of religious motivation.  Further, the text of the statute makes no reference to any religion or sacred words.  Congress, in 21 U.S.C. §812, Schedule I(c) regulates marijuana as a Schedule I drug.  Likewise, the State of Rhode Island has long regulated that substance as a Schedule I drug, offering only a limited carve out for medical use in the MMA.  No religion is granted an exception, as the MMA focuses on health, not religion.

In discussing the application of the Religious Land Use and Institutionalized Persons Act (not pled or applicable to these Defendants), one District Court listed numerous cases that refused to invalidate state laws on the grounds that they violated someone's religious freedom.   In Cavanaugh v. Bartelt, 178 F.Supp.3d 819 (D.Neb. 2016), the District Court for the District of Nebraska rejected a claim by a Pastafarian that certain prison rules violated his belief in a "flying Spaghetti Monster."[8]  That Court referenced a laundry list of cases for the proposition that the First Amendment's free exercise clause has a limit: "as courts have found when confronted with cultural beliefs, secular philosophies such as scientism, evolutionism, and objectivism; and institutions like the 'Church of Cognizance' or 'Church of Marijuana.'"  Id.

In Gonzales v. Raich, 545 U.S. 1, 22 (2005) our Supreme Court indicated that there is no federal Constitutional right to the use or cultivation of marijuana and that the federal government's ban on marijuana possession, use, and cultivation is valid; thus the law is a neutral and valid law of general applicability.  As such, it is subject to the rational basis test.  There is no indication that

---

[8] Plaintiff Cavanaugh claimed that he was a "pastafarian," a believer in the divine "Flying Spaghetti Monster" who practices the religion of "FSMism."

the Rhode Island legislature intended to discriminate against a religion or religious practice.  Instead, it is clear that the enactment of the Medical Marijuana Act was for the purpose of achieving a medical benefit for individuals with serious illness, while maintaining strict governmental oversight of growth, distribution and use.  It neither promotes nor discriminates against any religion or religious act.

### I.   Plaintiffs Do Not Allege A Legally Cognizable Equal Protection Violation

Plaintiffs allege that their rights to equal protection under the laws have been violated, often citing R.I. Gen. Laws § 3-8-11.1(d), an exception to the State's ban on the use of alcoholic beverages by minors.  The glaring flaw in that argument is that sacramental wine is not considered by either the federal or state government as a Schedule I controlled substance.  Marijuana is.

The Equal Protection Clause demands that similarly situated persons be treated similarly by their government.  Tapalian v. Tusino, 377 F.3d 1, 5 (1st Cir. 2004).  In order to establish an equal protection claim, a plaintiff must allege facts showing that "(1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person."  Davis v. Coakley, 802 F.3d 128, 133 (1st Cir. 2015).  The First Circuit has been steadfast and consistent with its explanation of the doctrine of equal protection:

> An individual is 'similarly situated' to others for equal protection purposes when 'a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated.  As we have explained, '[e]xact correlation is neither likely nor necessary, but the cases must be fair congeners.  In other words, apples should be compared to apples.

Id. (internal citations omitted).

Plaintiffs' argument that they must be treated the same as churches that use sacramental wine during religious services ignores the fundamental distinction that Rhode Island law has made between alcoholic beverages and controlled substances. The former is a permitted recreational use substance (although regulated) and the latter is not—except under tightly controlled circumstances along with a heavily regulated licensing process. Further, the amount of sacramental wine given to any one person is negligible—and it is consumed (usually) once a week. Plaintiffs have alleged that they use "the stuff copiously" in the context of their religious observances. See Original "Complaint, Doc. 1, p. 14. The difference between a sip of sacramental wine and the copious use of a Schedule I controlled substance needs no further explanation. Their argument has no merit, and their Amended Complaint should be dismissed on this ground.

### J.  Plaintiffs Fail to Allege A Cause of Action Based on Constitutional Guarantees of Due Process and/or A Fair Trial

Plaintiffs' support for their allegations that their right to a fair trial and to due process center around the "use of the M word." (Docket Entry No. 8, Amended Complaint, para. 15B). They do not elaborate on how this has affected anything in any of their pending lawsuits, or in their pending criminal prosecution. During the state court hearings, Plaintiffs objected vociferously to the Attorney General's use of the word marijuana, instead of their preferred terminology—cannabis. Plaintiffs preferred the term "neener-neener" during those hearings. (Exhibit F, p. 50, 70). Marijuana, or marihuana, is the word used by the Rhode Island General Assembly (R.I. Gen. Laws § 21-28-2.08(a)(d)(10)) and is the only one with any legal significance. Furthermore, the simple use of a word has never been held to rise to the level of a constitutional violation. In fact, use of the word "murder" by a prosecutor in a trial was held not to be a due process violation. Fernandez v. Gerry, 2008 WL 2775477 (D. N.H. 2008). In the Fernandez case, Fernandez argued that the prosecutor used and elicited from witnesses the word "murder" during his

criminal trial before a jury on a murder charge, in violation of his due process rights and his right to a fair trial.  The Court declined to adopt Fernandez' position, and ruled that use of the word "murder" to characterize the charged conduct in a trial for second-degree murder did not "so infect [] the trial with unfairness as to make the resulting conviction a denial of due process." Id. at 5 (citation omitted).  Plaintiffs argue, with no legal support, that the Attorney General's mere use of the word "marijuana," a word the Legislature deemed appropriate to be used and defined in Rhode Island law, is somehow a violation of their constitutional rights. Plaintiffs have failed to state a legally cognizable claim based on the use of a word in hearings and in statutes.

### K.  The Complaint Does Not Contain a Short and Plain Statement of a Claim Showing That Plaintiffs are Entitled to Relief.

Federal Rule 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Plaintiffs' Amended Complaint is neither short nor plain.  To begin with, it is 56 pages and 123 paragraphs in length.  However, it is the requirement that the pleading be "plain" that is most relevant to the Amended Complaint.  The State Defendants have attempted to decipher the claims against them, and have made a stab at pointing out the legal infirmities in the Amended Complaint, but it is doubtful that the State Defendants and the Plaintiffs interpret the Amended Complaint in the same manner.  The Amended Complaint makes a number of conclusory allegations, and contains much editorial content and appears to be an avenue for Plaintiffs to vent about certain things, such as the Governor's budget, which was complained of, but which the Plaintiffs' acknowledge "was perfectly legal."  (Docket Entry No. 8, Amended Complaint, para. 92).   To the extent that this Court finds that any of the Amended Complaint survives this Motion to Dismiss, the State Defendants respectfully request that they be ordered to file a new pleading complying with the intent and the language of Rule 8.

In <u>Laurence v. Wall</u>, 2007 WL 1875794 (D.R.I. 2007), this Court dismissed an 80-page complaint that contained over 255 numbered paragraphs because it violated Rule 8.  The court held that "[t]he statement should be short because unnecessary length places an unjustified burden on the court and on the party who must respond to it."  <u>Id</u>. at 1.  Furthermore, [t]he statement should be plain because the principle function of pleadings…is to give the adverse party fair notice of the claim asserted to enable him to answer and prepare for trial."  <u>Id</u>.

In <u>Peabody v. Griggs</u>, 2009 WL 3200686 (D.R.I. 2009), the plaintiff filed a number of lengthy complaints which this Court dismissed pursuant to Rule 8.  Plaintiff's original complaint was 84 pages, contained 19 counts and 535 numbered paragraphs.  Plaintiff's first amended complaint was 97 pages, 18 counts, 538 numbers paragraphs and contained 7 exhibits which totaled an additional 36 pages.  This Court granted defendant's motion to dismiss pursuant to Rule 8.  The court, however, permitted plaintiff to file another amended complaint.  Plaintiff's second amended complaint consisted of 73 pages, 13 counts, 380 numbered paragraphs and 6 exhibits which totaled an additional 22 pages.

After filing the second amended complaint, it appears that the court, *sua sponte*, ordered plaintiff to show cause why the second amended complaint did not violate Rule 8.  <u>Id</u>. at 1.  In dismissing the second amended complaint, the court noted that length alone is not the issue.  Rather, "[w]hen viewed in its totality, the complaint is a rambling, fact-laden, disjointed 'quagmire of minutiae.'" <u>Id</u>. at 4 (quoting <u>Kuchay v. Vetter</u>, 2007 WL 2410333, at *1 (N.D.Ill. 2007)).  Judge Lisi noted that the complaint was replete with irrelevant, repetitive, and incomprehensible factual averments that saddled Defendants with the unfair task of meeting their obligation to "admit or deny the allegations asserted ... by an opposing party."  <u>Id</u>.  The complaint would also force the

court to parse countless irrelevant and wholly unnecessary factual allegations to attempt to determine what Plaintiffs are alleging against each Defendant.  Id.  The Court provided examples of the unnecessary factual allegations and noted that the "mash of allegations [in the second amended complaint] read more like a novel than a legal pleading and frequently digress into improper argumentative detail."  Id. at 10.  (quoting Lease v. Fishel, 2009 WL 922486, at *2 (M.D. 2009)); see also Fritz v. County of Kern, 2009 WL 382741, at *2 (E.D.Cal. 2009) (a "complaint is not a novel-background allegations and evidentiary detail are simply unnecessary and violate Rule 8(a)(2)"); In re Electronic Data Systems Corp., 305 F.Supp.2d 658 (E.D.Tex. 2004) (Rule 8 is violated when plaintiffs choose to plead excessive facts).

This Court concluded that the "time and expense involved…to decipher and parse this overly detailed and unduly cumbersome complaint is wholly unjustified."  Id. at 11.  As such, in dismissing the second amended complaint, she noted that "[c]omplaints which ramble, which needlessly speculate, accuse, and condemn, and which contain circuitous diatribes far removed from the heart of the claim do not comport with [the goals of the federal rules of civil procedure and] such complaints must be dismissed."  Id. (quoting Prezzi v. Berzak, 57 F.R.D. 149, 151 (S.D.N.Y. 1972)).

If the Court does not dismiss this case on the ground(s) argued above, then the Complaint should be dismissed on this procedural ground.

## VI.  <u>CONCLUSION</u>

For the foregoing reasons, the State Defendants respectfully request that this action be dismissed.

STATE DEFENDANTS
By Their Attorney,

PETER F. KILMARTIN
ATTORNEY GENERAL

*/s/ Rebecca Tedford Partington*
*/s/ Susan E. Urso*
_____
Rebecca Tedford Partington, (#3890)
Susan E. Urso, (#4688)
Assistant Attorneys General
150 South Main Street
Providence, RI  02903
(401) 274-4400
(401) 222-2995 FAX

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 22nd day of December, 2016 I have e-filed the within document via the ECF filing system and that it is available for viewing and downloading.  On this date I have also mailed a copy of the within by first class mail, postage prepaid to:

Anne Armstrong
99 Hudson Pond Road
West Greenwich, RI, 02817

Alan Gordon
99 Hudson Pond Road
West Greenwich, RI, 02817

*/s/ Susan E. Urso*
_____